In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 07-1615

CAMEEL A. HALIM,

*Plaintiff-Appellant,*

v.

GREAT GATSBY'S AUCTION GALLERY, INCORPORATED,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 8414—**Charles P. Kocoras**, *Judge.*

---

ARGUED NOVEMBER 30, 2007—DECIDED FEBRUARY 14, 2008

---

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-Appellant Cameel A. Halim appeals various actions taken by the district court in his civil lawsuit against Defendant-Appellee Great Gatsby's Auction Gallery, Incorporated ("Gatsby"). For the reasons herein, we affirm the rulings of the district court, but decline to review its imposition of sanctions on Halim's counsel at the district court on jurisdictional grounds.

## I. Background

On October 9, 2003, Halim, an Illinois resident and antique timepiece collector, initially filed a complaint

against Gatsby in Illinois state court, alleging that items he purchased at a Gatsby auction did not match the descriptions in the auction item catalog. Halim participated in the auction via telephone and did not see or inspect any of the items before bidding on them. Halim sued for breach of warranty, misrepresentation, novation, and rescission. Gatsby removed the case to federal court under diversity jurisdiction on November 21, 2003, and filed a motion to dismiss the complaint on December 19, 2003 on the grounds that a binding arbitration clause existed in the auction agreement.[1] On March 5, 2004, the district court ruled that Gatsby had successfully invoked the contract's binding arbitration clause. Pursuant to that holding, the district court stayed the case and ordered the parties to arbitration.

Halim filed an arbitration demand with the American Arbitration Association ("AAA") in March of 2005. At the start of the arbitration, the arbitrator sent both parties a letter that confirmed various dates and deadlines. The letter also stated that at the conclusion of the arbitration, the arbitrator would issue an award including "findings of fact and conclusions of law."

During extensive and contentious discovery, Halim requested copies of invoices for all other purchases from the same Gatsby auction, claiming they were relevant to prove that Gatsby's auction was not "without reserve" as he claimed it had been advertised. Gatsby refused to produce these records on the basis that they were irrelevant to the claims brought by Halim because the items Halim bid on were not without reserve. Halim requested a formal ruling on the discovery dispute from the arbitrator. Having already admonished the parties for their failure to

---

[1] Gatsby moved to dismiss the complaint on several additional grounds, none of which are relevant to this appeal.

cooperate with each other's discovery requests in a written order dated January 23, 2006, the arbitrator declined to issue a formal ruling. Instead, the arbitrator directed the parties to abide by his January 23, 2006 order instructing the parties to immediately review discovery requests and make a good faith effort to satisfy those requests so that the evidentiary hearing could go forward as scheduled. The evidentiary hearing had already been continued, and as the arbitrator wrote in his January 23, 2006 order: "[B]oth sides have lost sight of the fact that this is an arbitration and meant to be a cost effective and efficient process to be completed in an expeditious manner. It is inappropriate for me to micromanage a laborious and tedious discovery process as if this were a litigated case in court."

The case proceeded to a final arbitration hearing, and on September 15, 2006, the arbitrator issued a ruling denying Halim's claims in their entirety. In his ruling, the arbitrator explained the factual circumstances giving rise to Halim's claims, and then proceeded to address Halim's claims in turn. The arbitrator made the following statements in his analysis of Halim's claims:

- "[T]hese disclaimer documents are valid, enforceable, and applicable in this case."

- "The burden was on claimant to overcome the obligations he imposed on himself by participating in the auction under the terms and conditions of this sale."

- "[Halim] is bound by the conditions of his participation and has shown no legal or factual basis for recovery in this proceedings."

- "[P]roven fraud could overcome these disclaimer bars to recovery. However, there was no credible evidence of fraud, antecedent or otherwise, that would afford claimant any relief in this case."

- "[C]laimant's failure to conduct any due diligence is fatal to a recovery by him on any applicable theory claimed by him in the case."

- "It is doubtful that the Illinois Consumer Fraud and Deceptive Practice Act applies to this case but, if it does, the evidence fails to show a violation of the Act by respondent."

- "Claimant's assertion of a novation here is not supported by the evidence and must also fail as a basis for recovery."

- "[A]ny damages claimant has sustained resulted from claimant's own failure to exercise ordinary diligence. . ."

- "[T]he law and evidence do not afford [Halim] any legal relief in this case."

The case then returned to the federal district court, where, on December 5, 2006, Halim filed a motion to vacate the arbitration award. Halim argued that the arbitrator failed to rule on the discovery dispute regarding Gatsby's invoices for other purchases from the auction and failed to issue an opinion containing findings of fact and conclusions of law. On January 10, 2007, Gatsby filed a motion to confirm the arbitration award, and shortly thereafter, sent Halim a Rule 11 letter informing him that Gatsby would seek sanctions if Halim did not withdraw his frivolous motion to vacate. Halim declined to withdraw his motion, and on February 6, 2007, Gatsby moved for Rule 11 sanctions.

On February 15, 2007, the district court denied Halim's motion to vacate and granted Gatsby's motion to confirm the arbitration award. The district court determined that Halim failed to present any meritorious objection to the arbitrator's award; rather, Halim simply disagreed with the arbitrator's decision. On March 12, 2007, the

district court granted Gatsby's motion for Rule 11 sanctions, and ordered Halim's attorney to pay $7,187.50.

## II.  Discussion

Halim appeals (1) the district court's decision to stay the proceedings pending arbitration; (2) the district court's confirmation of the arbitration award; and (3) the district court's imposition of Rule 11 sanctions.

### A.  Stay of Proceedings Pending Arbitration

Halim's first argument on appeal is that the district court improperly treated Gatsby's motion to dismiss as a motion to stay. Gatsby sought to dismiss Halim's complaint on the basis of a binding arbitration clause in the auction agreement. The district court, finding that Gatsby had properly invoked the arbitration clause, stayed the case pending arbitration.

Halim's argument is without merit. As this Court has noted on numerous occasions, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *E.g.*, *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005) (citing *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002)). It is undisputed that one of the grounds on which Gatsby sought to dismiss Halim's complaint was the arbitration clause. By seeking dismissal of the complaint based on a binding arbitration clause in the auction agreement, Gatsby successfully invoked the arbitration clause and the court properly stayed the proceedings.

In his challenge to the district court's stay of the case, Halim also asserts that the district judge erred in finding that Gatsby had not waived its right to arbitrate

the dispute. Halim contends that Gatsby's decisions to remove the case to federal court first and then to seek dismissal of the case "on the merits" constituted an implicit waiver of Gatsby's right to arbitrate.

Factual determinations on which a district court predicates a finding of waiver are reviewed for clear error, while legal questions of whether a party's conduct amounts to waiver are reviewed *de novo. Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002). A party may waive a contractual right to arbitrate expressly or implicitly. *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). Courts must "determine whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Id.* (quoting *Ernst & Young*, 304 F.3d at 757). Although a variety of factors may be considered, diligence or a lack thereof should weigh heavily in the court's determination of whether a party implicitly waived its right to arbitrate. *Id.* A party does not waive its right to arbitrate a dispute by filing a motion to dismiss or a motion to transfer venue. *Id.* at 726-27.

Halim relies on *Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995), for his position that Gatsby waived its right to arbitrate by removing the case to federal court and then filing a motion to dismiss, thereby asking the district court to "rule on the merits of the case." In *Cabintree*, the plaintiffs filed suit in state court and the defendant removed the case to federal court based on diversity of citizenship. 50 F.3d at 389. After participating in pretrial activities for six months, including receiving over two thousand documents in discovery, the defendant moved to stay the action pending arbitration just five months before trial. *Id.* at 390-91. Based on the *Cabintree* defendant's combined

actions, this Court held that the defendant had implicitly waived its right to arbitrate the dispute. *See id.*; *see also Sharif*, 376 F.3d at 727 (noting the failure by the *Cabintree* defendant to make a reasonable determination to proceed in arbitration rather than in litigation); *Ernst & Young*, 304 F.3d at 757 (explaining how the *Cabintree* defendant's participation in adversary proceedings in litigation was a manifestation of intent to forego arbitration).

This Court has explicitly held that simply moving to dismiss a case does not waive one's right to arbitrate. *E.g.*, *Sharif*, 376 F.3d at 726-27 (holding that a motion to dismiss or transfer venue does not constitute waiver of one's right to arbitrate). Moreover, although this Court has considered removal in determining whether there was implicit waiver of an arbitration clause, it has not found waiver where removal was the only action taken by the party against whom the waiver was to be enforced. *See, e.g.*, *Cabintree*, 50 F.3d at 390-91 (finding removal *and* participation in several months of litigation to be inconsistent with intent to arbitrate); *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 651 (7th Cir. 2000) (finding filing of complaint in state court, and then waiting more than a year to demand arbitration after state court dismissal to be inconsistent with intent to arbitrate).

Here, Gatsby removed the case to federal court approximately six weeks after Halim filed the complaint. Within thirty days of removal and before any other pleadings were filed in the case, Gatsby sought to dismiss the case by invoking the arbitration clause. By doing so, Gatsby asserted its intent to resolve the dispute in arbitration and not litigation. Gatsby did not participate in any pretrial activities prior to invoking the arbitration clause, nor did Gatsby unreasonably delay its arbitration demand. Absent any other action, removal alone did

not amount to implicit waiver of its right to arbitrate. We find that the district court properly found that Gatsby did not waive its right to arbitrate and therefore properly stayed the case pending arbitration.

### B.  Confirmation of the Arbitration Award

Next, Halim argues that the district court erred by confirming the arbitration award because the arbitrator "manifestly disregarded the law" by declining to formally rule on a discovery dispute and by failing to issue an award containing "findings of fact and conclusions of law." Halim claims that both of these errors were in excess of the arbitrator's powers and therefore violated the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4).

The grounds for overturning an arbitration award are extremely limited. *See Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268-69 (7th Cir. 2006); *IDS Life Ins. Co. v. Royal Alliance Associates, Inc.*, 266 F.3d 645, 649 (7th Cir. 2001). This Court has limited the "manifest disregard of the law" standard for purposes of 9 U.S.C. § 10(a)(4) to encompass only two scenarios: (1) an order requiring the parties to violate the law; or (2) an order that does not adhere to the legal principles specified by the contract. *George Watts & Son, Inc. v. Tiffany and Co.*, 248 F.3d 577, 581 (7th Cir. 2001). Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award. *IDS Life Ins. Co.*, 266 F.3d at 650.

Halim first contends that the arbitrator's refusal to formally rule on a discovery dispute concerning the production of copies of all invoices for the auction warrants vacatur of the arbitrator's award. We disagree. Keeping in mind the goal of resolving disputes in an expeditious and cost-effective manner, the arbitrator directed the parties' attention to his January 23, 2006

order instructing the parties to complete discovery in good faith and without micromanagement. This instruction was in compliance with the AAA rules governing discovery. Rule L-4 of the AAA permits the arbitrator to "take such steps as [he] may deem necessary or desirable to avoid delay and to achieve a just, speedy and cost effective resolution." *Accord George Watts & Son, Inc.*, 248 F.3d at 580 ("[J]udges may not deprive arbitrators of authority to reach compromise outcomes that legal norms leave within the discretion of the parties to the arbitration agreement."); *see also Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., Local 627*, 358 F.3d 459, 462 (7th Cir. 2004) (reiterating the need for arbitration to be efficient and cost-effective resolution of disputes); *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 289 (3d Cir. 2004) (noting that limited judicial review of arbitrator's decisions is necessary to uphold the federal policy in favor of arbitration and to avoid long and expensive litigation proceedings). The arbitrator's decision not to rule on the additional discovery disputes and instead to remind the parties of their mutual contractual obligations to cooperate in discovery was an attempt by the arbitrator to give the parties what they had contracted for: a cost-effective and efficient resolution of their dispute. *See George Watts & Son, Inc.*, 248 F.3d at 578. The arbitrator's failure to formally rule on that particular discovery dispute was a far cry from a "manifest disregard of the law."

Halim also argues that the arbitrator manifestly disregarded the law by failing to issue an award containing "findings of fact and conclusions of law," as agreed upon by the parties. Halim cites *dicta* (a hypothetical, no less) from *George Watts & Son, Inc.* for the proposition that an arbitrator's lack of sufficient reasoning in his award is comparable to an arbitrator's decision to apply the law of

a state other than the state law applicable under the arbitration agreement. *See* 248 F.3d at 579 (hypothesizing that if an arbitration agreement specifies that a dispute is to be resolved under Wisconsin law, and the arbitrator declares that he prefers New York law, or no law at all, vacatur of the award under § 10(a)(4) would be warranted). Halim's comparison is absurd. An arbitral order that does not adhere to the legal principles specified by the arbitration agreement is one of two scenarios that warrants vacutur of the arbitral award pursuant to § 10(a)(4). *George Watts & Son, Inc.*, 248 F.3d at 581. Ignoring a choice of law provision in an arbitration agreement exceeds the arbitrator's power since the arbitrator's power is borne from that arbitration agreement. In this case, the arbitrator did not exceed his power by not explaining his award in greater detail. In other words, the arbitrator did not exceed his power by not doing enough.

As the excerpts from the award illustrate, the arbitrator did indeed provide an award containing findings of fact and conclusions of law; unfortunately for Halim, they were not the findings of fact or conclusions of law he desired. We have been clear that a party may not "use issues of the arbitrator's authority as a ruse to obtain judicial review on the merits of an arbitral award." *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 278 (7th Cir. 1992) (quotation omitted). In our opinion, Halim sought review of the arbitrator's authority without a meritorious ground to do so. The district court properly confirmed the arbitrator's award.

## C.  Imposition of Rule 11 Sanctions

Finally, Halim appeals the Rule 11 sanctions imposed on his former attorney, Alan M. Didesch, by the district court. However, we lack jurisdiction to review the sanctions. Didesch failed to file a notice of appeal on his own behalf.

While Halim's notice of appeal mentions *Halim's* intent to appeal the district court's March 12, 2007 order granting sanctions, Halim lacks standing to appeal sanctions imposed on Didesch. *See* FED. R. APP. P. 3(c)(2) ("A pro se notice of appeal is considered filed on behalf of the signer and the signer's spouse and minor children (if they are parties), unless the notice clearly indicates otherwise."); *see also Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 933 (7th Cir. 2003) (where a notice of appeal did not list counsel in caption of appeal nor did it mention sanctions in body of notice of appeal, this court lacked jurisdiction); *compare Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am.*, 339 F.3d 1146, 1149 (9th Cir. 2003) (notice of appeal was adequate because *attorney* signed the notice of appeal which mentioned intent to appeal applicable sanctions and *sanctioned attorney* argued for reversal of sanctions); *Laurino v. Tate*, 220 F.3d 1213, 1218 (10th Cir. 2000) (same). Because Didesch took no part in filing the notice of appeal or the appeal thereafter, we cannot find any plausible indication of *his* intention to challenge the sanctions imposed on him. We therefore lack jurisdiction over any challenge to the Rule 11 sanctions imposed.

## III.  Conclusion

For the foregoing reasons, we AFFIRM.

A true Copy:

        Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—2-14-08