In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2187

BRICKSTRUCTURES, INC.,

*Plaintiff-Appellee,*

*v.*

COASTER DYNAMIX, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-10969 — **Joan B. Gottschall**, *Judge.*

ARGUED DECEMBER 9, 2019 — DECIDED MARCH 11, 2020

Before EASTERBROOK, ROVNER, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Brickstructures, Inc. and Coaster Dynamix, Inc. joined forces to create a LEGO-compatible roller coaster set. The venture later soured, and Brickstructures filed a lawsuit in federal court against its former partner. The two companies had signed an agreement that contained an arbitration provision. Coaster Dynamix invoked that provision in a second motion to dismiss. Brickstructures viewed

the motion as untimely (indeed frivolous) and stated so in a letter that threatened sanctions if Coaster Dynamix did not withdraw its motion. The tactic worked, and Coaster Dynamix withdrew its arbitration demand. When Coaster Dynamix renewed the argument in a motion to compel arbitration, the district court denied the resurrected request on the ground that the earlier withdrawal amounted to a waiver of the right to arbitrate. We agree.

**I**

Brickstructures, Inc. is a product design firm that creates LEGO sets, those colorful plastic bricks used to form miniature castles, spaceships, and whatever else a youthful imagination can conjure up. Coaster Dynamix, Inc. creates and sells model roller coasters. The two companies agreed to partner to design a roller coaster kit that would be compatible with LEGOs or other plastic bricks, and in doing so, they executed a joint venture agreement. The document was no master class in contract drafting—it was a stock, fill-in-the-blank agreement with spaces for the terms and details to be inserted. Many of those blanks went unfilled.

The agreement contained this arbitration clause:

SECTION TEN: ARBITRATION

The assignment of specific duties and authority to _____ *[C.D.]* was made to avoid major differences between the parties as to conduct of the venture. The parties declare that the terms of this agreement are controlling as to each of them. Any matter in dispute, and which is not provided for in this agreement, shall be submitted to arbitration _____ *[under the provisions of _____ (cite statute) or as the case may be].*

With the venture agreement in place, the collaboration successfully released an initial product called the Roller-Coaster Factory. But the relationship fizzled once the companies turned their sights toward a successor product that never reached the market. For its part, Coaster Dynamix went on to independently launch the Cyclone, a LEGO-compatible roller coaster kit, without attributing any credit to its former partner.

Brickstructures sued, claiming that Coaster Dynamix breached the joint venture agreement and its fiduciary duties and falsely advertised in violation of the Lanham Act. Coaster Dynamix moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), principally arguing that the venture arrangement was not an enforceable contract. The district court dismissed the original complaint on the basis of a jurisdictional defect.

An amendment cured the jurisdictional issue and added an unjust enrichment claim. Coaster Dynamix moved anew to dismiss, this time under Rules 12(b)(2), 12(b)(3), and 12(b)(6). Once again, the main contractual argument was that the amended complaint did not allege a binding joint venture. But this time Coaster Dynamix urged the court, if it did find there was a contract, to dismiss the lawsuit under Rule 12(b)(3) for improper venue because the agreement contained a provision that made arbitration the exclusive forum for the claims. The company also raised a personal jurisdiction argument.

Days later Coaster Dynamix received a letter from Brickstructures's attorneys. The letter demanded that the company withdraw the personal jurisdiction and arbitration arguments from its second motion to dismiss because Coaster Dynamix

waived them by not advancing them in its first motion. The letter called the arguments "clearly frivolous" and threatened to seek sanctions.

Brickstructures's letter proved effective. That very day Coaster Dynamix informed the district court that it was withdrawing its personal jurisdiction and arbitration-based venue arguments. The notice Coaster Dynamix filed with the court was clear and precise: "Since Coaster Dynamix did not explicitly move on the personal jurisdiction and venue issues in its motion to dismiss the original complaint, Coaster Dynamix withdraws the sections of its pending motion to dismiss based on lack of personal jurisdiction and improper venue." That left only Coaster Dynamix's Rule 12(b)(6) argument—that the joint venture agreement was not an enforceable contract—remaining on the table. The district court denied the motion, determining that the amended complaint adequately alleged a binding agreement.

Coaster Dynamix put the arbitration issue back on the table roughly one month later when it moved to compel arbitration. The company noted that it raised the argument in its second motion to dismiss only then to receive no ruling from the district court. Nowhere, however, did Coaster Dynamix mention that it had withdrawn its motion. Brickstructures caught the omission and argued that Coaster Dynamix was playing games and had plainly waived its right to arbitrate, both by withdrawing the Rule 12(b)(3) argument from the second motion to dismiss and by its conduct in the litigation (like proceeding with some discovery). Coaster Dynamix replied and insisted that it withdrew its arbitration argument only in response to Brickstructures threatening sanctions.

The district court declined to compel arbitration, finding that Coaster Dynamix waived its right to arbitrate by expressly withdrawing the arbitration demand in its second motion to dismiss. "By first arguing that the 2012 agreement requires arbitration and then withdrawing that argument," the court reasoned, "Coaster chose a course inconsistent with submitting the case to an arbitral forum." Nor did the court allow Coaster Dynamix to rescind its waiver. The court found unconvincing the company's contention that it was reasonable to abandon an arbitration demand in acquiescence to an adversary's threat to seek sanctions.

This appeal followed.

## II

We start by assuring ourselves of our own jurisdiction. Coaster Dynamix challenges an order denying its motion to compel arbitration and invokes the Federal Arbitration Act as the jurisdictional hook for the interlocutory appeal. The FAA allows appeals from "an order … denying a petition under section 4 of this title to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B). Brickstructures argues that Coaster Dynamix's motion to compel arbitration was not a petition under § 4 of the FAA but rather a motion challenging venue under Rule 12(b)(3). Brickstructures is right that Coaster Dynamix titled its motion as being brought under Rule 12(b)(3). And so too is Brickstructures correct that circuit courts lack jurisdiction over an interlocutory decision to deny a challenge to venue. See *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 496–98 (1989).

But it is the substance of a motion that counts, not its label. See *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008) ("[W]hether a motion filed within 10 days of the entry of judgment should be analyzed under Rule 59(e) or Rule 60(b)

depends on the *substance* of the motion, not on the timing or label affixed to it."); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996) ("The district court may look beyond the technical nomenclature of motions to dismiss to reach the substance of the movant's contentions."). Though Coaster Dynamix's motion bore a Rule 12(b)(3) sticker, the venue argument was rooted in enforcement of the arbitration agreement. Even more, Coaster Dynamix expressly clarified—before the district court ruled on the motion—that it was brought under Rule 12(b)(1), Rule 12(b)(3), *and* § 4 of the FAA. Brickstructures dedicated most of its district court response brief to analysis under the FAA, suggesting it too understood the motion to invoke that statute.

Whatever it was called, Coaster Dynamix's motion to compel arbitration was in substance a motion under § 4 of the FAA, so we have jurisdiction and can proceed to the merits.

### III

Federal law favors arbitration. See *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Like other contractual rights, though, the right to arbitrate is waivable. See *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). A waiver can be express or implied through action. See *id*. Either way, the question is whether "based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002). The analysis can be short when the basis of the waiver is an express abandonment of the right. In most situations, "I waive arbitration" answers the question. The district court found that Coaster Dynamix's withdrawal of the

arbitration argument amounted to an explicit waiver of any right to arbitrate.

## A

Our first stop is the standard of review, which the parties dispute. Brickstructures urges us to apply a clear error standard. It relies on *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 588 (7th Cir. 1992), where we held that the clear error standard applies to *both* the district court's factual determinations and its application of the legal standards to those facts. Coaster Dynamix, on the other hand, points to cases in which we have said that factual findings are reviewed for clear error but "the legal question of whether the conduct amounts to waiver is reviewed *de novo*." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002); see also *Kawasaki*, 660 F.3d at 994; *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561–62 (7th Cir. 2008).

We see no inconsistency. "[T]here is both a factual and a legal dimension to the waiver inquiry." *Iowa Grain Co. v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999). The facts drive the waiver analysis, but the inquiry takes direction from the background legal rules. See *id*. We review *de novo* the district court's determinations regarding the legal principles, like the applicable common law rules and presumptions, but defer to the district court's findings with respect to the facts and the legal consequences of those facts. See *id*. Where, as here, nobody contends that the district court "misunderstood the applicable law, the result turns on whether the district court clearly erred in its assessment of the situation." *Id.*; see also *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018) (articulating the same standard of review). Adhering to the

position articulated in *Iowa Grain*, we apply the clear error standard.

All for good reason too: waiver is an intensely fact-bound question and here the district judge is in a better position to assess the parties' conduct. See *St. Mary's*, 969 F.2d at 588. As the Supreme Court explained not long ago, in the case of mixed questions of fact and law that "immerse courts in case-specific factual issues"—which require them to do things like "marshal and weigh evidence" and "make credibility judgments"—"appellate courts should usually review [the] decision with deference." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018). Whether a party has waived its right to arbitrate by acting inconsistently with the right is such a mixed question, so we appropriately review the district court's determination with deference.

B

We find no clear error in the district court's finding that Coaster Dynamix waived its right to arbitrate. The company expressly invoked the venture agreement's arbitration provision and urged dismissal of Brickstructures's suit because arbitration was the "exclusive venue." But then Coaster Dynamix withdrew the argument—a litigation choice inconsistent with the right to arbitrate. The withdrawal signaled to Brickstructures and the district court that Coaster Dynamix was content to leave the litigation where it was in federal court. Having put the arbitration card on the table and then taken it back, Coaster Dynamix was not permitted to play that card again later.

As the district court observed, Coaster Dynamix employed a wait-and-see approach—it decided to retract the

arbitration issue and roll the dice on its other dismissal arguments before seeking a ruling on the proper venue. Parties seeking to enforce their arbitration rights ought to get to it as soon as possible. Traveling too far down the judicial road before reversing course to restart in an arbitral forum wastes time and resources. See *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) ("Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution."). Taking the time to weigh one's options "is the worst possible reason for delay." *Id*.

That does not mean parties waive their right if a motion to compel arbitration is not the first thing they file on the docket. As Coaster Dynamix points out, we have acknowledged before that taking certain actions, like filing a motion to dismiss or requesting a transfer of venue, does not automatically waive the right to arbitrate. See *Halim*, 516 F.3d at 562; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 725–26 (7th Cir. 2004). But Coaster Dynamix did not just file a motion to dismiss. By identifying the arbitration argument in its motion to dismiss, the company showed that it knew of its right to arbitrate, and by then expressly withdrawing the argument, it surrendered the right.

Coaster Dynamix insists that waiver must be based on voluntary conduct and that its withdrawal of the arbitration argument was not voluntary because it was spurred by Brickstructures's sanctions letter. The waiver analysis does not require us to delve into the deeper motivations behind counsel's litigation choices. Even if it did, there can be no doubt that Coaster Dynamix's choice to withdraw its arbitration

argument was intentional and voluntary. Indeed, Coaster Dynamix itself calls the withdrawal a "strategic decision." It had options after receiving Brickstructures's letter. It could have conducted its own research and concluded that the arbitration argument was neither frivolous nor sanctionable and moved forward with the second motion to dismiss. Or it could have taken the course it ultimately took—withdraw the arbitration demand and see if the other dismissal arguments win the day. Coaster Dynamix voluntarily chose the option inconsistent with the right to arbitrate.

Coaster Dynamix tries to reframe the issue by focusing on the different ways it raised arbitration. It says the arbitration argument in the second motion to dismiss was made under Rule 12(b)(3) and the later filed motion to compel arbitration was brought under the FAA. This distinction matters, the argument goes, because even if withdrawal of the arbitration demand from the former motion constituted waiver, the waiver would be limited to Rule 12(b)(3) and would not foreclose the later argument under the FAA. This misunderstands the proper inquiry. We do not ask whether Coaster Dynamix waived a particular argument under a certain rule or statute but rather whether it waived its contractual right to arbitrate. The procedural mechanism it sought to use does not control.

Nor was Coaster Dynamix entitled to rescind its waiver. A district court has the discretion to allow a party to rescind a waiver of the right to arbitrate. See *Iowa Grain*, 171 F.3d at 509–10. But rescission is reserved for "abnormal" circumstances, *Cabinetree*, 50 F.3d at 391, which this case does not present. The district court committed no error in so holding.

All of this leads us to AFFIRM.